
JS/USAO#2011R00108

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | CRIMINAL NO. ELH-11-0696 |
| v. | * | |
| | * | (Conspiracy to Commit Wire Fraud, |
| DEREK PEDIFORD, | * | 18 U.S.C. § 1349; Wire Fraud, 18 U.S.C. |
| KEVIN RICHARDSON, | * | § 1343; Aiding and Abetting, 18 U.S.C. § 2) |
| ANNETTE TATUM | * | |
| LUCRETE ABELLARD | * | |
| | * | |
| Defendants | *. | |
| **** | | |

## SUPERSEDING INDICTMENT

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges:

At all times relevant:

### Introduction

1. Lowe's Companies, Inc. ("Lowe's") operates a chain of hardware stores around the United States under the trademark "Lowe's Hardware." These stores sell a variety of hardware and hardware-related products.

2. Lowe's Hardware stores also make gift cards available to customers. A Lowe's gift card can be used to make purchases at any Lowe's Hardware store. Lowe's maintains a record of the amount of money associated with each gift card. These records are kept in an electronic database in Brentwood, Tennessee. When a gift card is used in a Lowe's store, a wire communication is made from the register in the Lowe's store to Lowe's central database in Brentwood, Tennessee. If the account associated with a gift card has a positive balance, the customer is permitted to make purchases against the balance associated with the gift card. Only after this wire communication with

the Lowe's database in Brentwood, Tennessee, can a Lowe's gift card be used to make a purchase.

3. Lowe's has a customer service call center operated out of Brentwood, Tennessee. Among other services provided by Lowe's, it is possible for Lowe's customers to make a phone call to Lowe's customer service number and use Lowe's automated customer service system to make a balance inquiry for a particular Lowe's gift card.

4. **DEREK PEDIFORD** was a resident of Maryland from at least in or about 2008 to in or about March 2011. From in or about March 2011 until in or about July 2011, he was a resident of New York. From in or about July 2011 to the present, he was again a resident of Maryland.

5. **KEVIN RICHARDSON** was a resident of New Jersey.

6. **LUCERTE ABELLARD** was a resident of New York.

7. **ANNETTE TATUM** was a resident of New York.

## Manner and Means of the Conspiracy and the Scheme and Artifice to Defraud

8. From in or about February 2007, through in or about September 2011, in the District of Maryland and elsewhere, defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM,** and others known and unknown to the Grand Jury, conspired and agreed together to knowingly and willfully execute and attempt to execute a conspiracy and scheme and artifice to defraud or to obtain money or property by means of false or fraudulent pretenses through the use of interstate wire communications.

9. It was part of the conspiracy and the scheme and artifice to defraud that defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM,** and others known and unknown to the Grand Jury, were familiar with the internal business procedures and terminology of Lowe's.

10. It was a further part of the conspiracy and the scheme and artifice to defraud that defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM**, and others known and unknown to the Grand Jury, would make or cause to be made phone calls to Lowe's Hardware stores located throughout the United States and falsely claim to be Lowe's employees. During the course of the conspiracy and the scheme and artifice to defraud, these calls were made to Lowe's stores located in approximately thirty-seven States. During these calls, the defendants would typically falsely claim to be Lowe's employees from "Headquarters" or the "IT Department." The defendants would further make false statements to induce a Lowe's employee to credit a gift card – that is, to add money to an account associated with a particular gift card. In a typical variation, the defendant would falsely claim that there was a problem with a register in the store, and ask a Lowe's store clerk to take certain diagnostic steps on a register. After inducing the clerk to take the diagnostic steps, the defendants would ask the clerk to credit the account associated with a particular Lowe's gift card to confirm that the register was working properly.

11. It was a further part of the conspiracy and the scheme and artifice to defraud that defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM**, and others known and unknown to the Grand Jury, would make or cause to be made a phone call to Lowe's automated customer service line in Brentwood, Tennessee, to confirm that the specified gift card was credited.

12. It was a further part of the conspiracy and the scheme and artifice to defraud that defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM**, and others known and unknown to the Grand Jury, would then present the

fraudulently credited gift cards to make purchases at Lowe's Hardware stores. The defendants and others known and unknown to the Grand Jury presented gift cards with fraudulently obtained credits in Lowe's Hardware stores on over 150 occasions, and none of these stores were located in the State of Tennessee. Each time a fraudulently credited gift card was presented by a defendant, that defendant therefore caused an interstate wire communication to be made from that register at that store to the Lowe's database in Brentwood, Tennessee, to determine the balance associated with that gift card.

13. It was further part of the conspiracy and the scheme and artifice to defraud that defendants **DEREK PEDIFORD, KEVIN RICHARDSON**, and others known and unknown to the Grand Jury, fraudulently obtained amounts exceeding $425,000.00 from Lowe's during the course of the scheme.

### Overt Acts

14. In furtherance of the conspiracy and the scheme to defraud, one or more of the conspirators committed and caused to be committed the following overt acts, among numerous others, in the District of Maryland and elsewhere:

    a. On or about September 6, 2010, **DEREK PEDIFORD**, and others known and unknown to the Grand Jury, made or caused to be made a phone call to a Lowe's Hardware store in Alexandria, Louisiana. During that call, the defendants convinced a Lowe's employee to credit a Lowe's gift card with $2,113.07. Shortly thereafter, **DEREK PEDIFORD** made or caused to be made an interstate phone call to determine the balance associated with the fraudulently credited gift card. **DEREK PEDIFORD**, and others known and unknown to the Grand Jury, then presented or

caused to be presented that same fraudulently credited gift card at a Lowe's Hardware store in Catonsville, Maryland, to make a purchase, causing an interstate wire communication between Catonsville, Maryland, and the Lowe's database in Brentwood, Tennessee to verify the balance on the fraudulently credited gift card.

      b.      On or about March 9, 2011, **KEVIN RICHARDSON**, and others known and unknown to the Grand Jury, made or caused to be made a phone call to a Lowe's Hardware store in Rosedale, New York. During that call, the defendants convinced a Lowe's employee to credit a Lowe's gift card with $3,471.66. Shortly thereafter, **KEVIN RICHARDSON** made or caused to be made an interstate phone call to determine the balance associated with the fraudulently credited gift card. **KEVIN RICHARDSON**, and others known and unknown to the Grand Jury, then presented or caused to be presented that same fraudulently credited gift card at a Lowe's Hardware store in Brunswick, New Jersey, to make a purchase, causing an interstate wire communication between Brunswick, New Jersey, and the Lowe's database in Brentwood, Tennessee to verify the balance on the fraudulently credited gift card.

      c.      On or about May 4, 2011, **KEVIN RICHARDSON**, and others known and unknown to the Grand Jury, made or caused to be made a phone call to a Lowe's Hardware store in Smokey Point, Washington. During that call, the defendants convinced a Lowe's employee to credit a Lowe's gift card with $3,514.73. Shortly thereafter, **KEVIN RICHARDSON** made or caused to be made an interstate phone call to determine the balance associated with the fraudulently credited gift card. **KEVIN RICHARDSON**, and others known and unknown to the Grand Jury, then presented or caused to be presented that same fraudulently credited gift card at a Lowe's Hardware store in Rosedale, New York, to make a purchase, causing an interstate wire communication between

Rosedale, New York, and the Lowe's database in Brentwood, Tennessee to verify the balance on the fraudulently credited gift card.

        d.        On or about July 5, 2011, **DEREK PEDIFORD, ANNETTE TATUM,** and others known and unknown to the Grand Jury, made or caused to be made a phone call to a Lowe's Hardware store in Honolulu, Hawaii. During that call, the defendants convinced a Lowe's employee to credit a Lowe's gift card with $4,287.96. Shortly thereafter, **DEREK PEDIFORD**, and others known and unknown to the Grand Jury, made or caused to be made an interstate phone call to determine the balance associated with the fraudulently credited gift card. **DEREK PEDIFORD**, and others known and unknown to the Grand Jury, then presented or caused to be presented that same fraudulently credited gift card at a Lowe's Hardware store in Bayonne, New Jersey to make a purchase, causing an interstate wire communication between Bayonnne, New Jersey, and the Lowe's database in Brentwood, Tennessee to verify the balance on the fraudulently credited gift card.

### The Charge

15.    From in or around February 2007, through in or around November 2011, in the District of Maryland and elsewhere, defendants **DEREK PEDIFORD, KEVIN RICHARDSON, LUCERTE ABELLARD, ANNETTE TATUM,** and others known and unknown to the Grand Jury, conspired and agreed together to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Lowe's Companies, Inc. and to obtain money in excess of $425,000, by means of materially false and fraudulent pretenses, representations and promises, as set forth above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, for the purpose of executing that scheme and artifice to defraud, in violation of Title 18, United States Code Section 1343.

18 U.S.C. §1349

## COUNT TWO
(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 14 of Count One are incorporated here.

### The Charge

2. On or about September 6, 2010, in the District of Maryland and elsewhere, the defendant,

### DEREK PEDIFORD,

and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communications certain signals, signs, and sounds, that is, a wire transmission from a Lowe's Hardware store in Columbia, Maryland, to an electronic database maintained by Lowe's in Brentwood, Tennessee to complete a purchase using a fraudulently obtained credit on a Lowe's gift card.

18 U.S.C. § 1343
18 U.S.C. § 2

## **FORFEITURE PROVISION**
(Forfeiture of Wire Fraud Proceeds)

1. The allegations contained in Counts One and Two of this Superseding Indictment are realleged and incorporated here for the purpose of alleging forfeiture.

2. As a result of the offenses set forth in Counts One through Five, the defendants,

**DEREK PEDIFORD,
KEVIN RICHARDSON,
LUCERTE ABELLARD, and
ANNETTE TATUM,**

shall forfeit to the United States any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violations, an amount of at least $425,000.00.

3. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

### Substitute Assets

4. If any of the property described in paragraph two of the Forfeiture Provision above as being subject to forfeiture, as a result of any act or omission of the defendants,

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code Section 853(p) to

seek forfeiture of any other property of the defendants up to the value of any property described in paragraph 2 above.

28 U.S.C. § 2461(c)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1956(c)(7)
18 U.S.C. § 1961(1)
21 U.S.C. § 853(p)

A TRUE BILL:

**SIGNATURE REDACTED**

/Foreperson

/S/ Rod Rosenstein

Rod J. Rosenstein
United States Attorney

Date:   March 29, 2012